**This order is SIGNED.**

**Dated: November 9, 2018**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

ar

| IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH | |
|---|---|
| In re:<br><br>VidAngel, Inc.,<br><br>        Debtor. | Bankruptcy Number: 17-29073<br><br>Chapter 11<br><br>Hon. Kevin R. Anderson |
| **MEMORANDUM DECISION GRANTING THE STUDIOS' MOTION FOR RELIEF FROM STAY** | |

## I.    INTRODUCTION

The matter before the Court is a motion for relief from stay to allow the film studios to continue their prosecution of pending copyright litigation against the Debtor in the Central District of California. The Court has heard the arguments of counsel, heard the testimony of witnesses, and received exhibits into evidence as noted on the record. The Court has also read the motions, objections, and other briefing by the parties and has conducted its own independent investigation of applicable law. The Court is prepared to rule and will now issue its findings of fact and conclusions of law as permitted by Fed. R. Civ. P. 52(a), made applicable in this contested matter through Fed. R. Bankr. P. 9014 and 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any of the conclusions of law herein are similarly deemed to be findings of fact, and they shall be equally binding as both.

## II.   JURISDICTION, NOTICE, VENUE

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(a) & (b) and 28 U.S.C. § 157(b). The motion for relief from stay is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (O), and the Court may enter a final order. Venue is appropriate in this District under 28 U.S.C. § 1408 & § 1409 and notice of this hearing was properly given to all parties in interest.

## III.   FINDINGS OF FACT

### A. The California Copyright Litigation

1.     On June 9, 2016, Disney Enterprises, Inc., Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, and Warner Bros. Entertainment Inc., (the "Studios") filed a complaint in the United States District Court for the Central District of California, the Honorable André Birotte Jr. presiding (the "California District Court" or the "California Copyright Litigation").[1] The complaint alleged that VidAngel circumvented the technological protection measures that control access to the Studios' copyrighted works in violation of the Digital Millennium Copyright Act ("DMCA") and infringed their exclusive rights of reproduction and public performance under the Copyright Act (the "Copyright Complaint"). The Copyright Complaint included a demand for a jury trial.[2]

2.     On September 16, 2016, VidAngel filed its amended answer and counterclaims against the Studios.[3]

---

[1] Studios' Exhibit 1 introduced and admitted into evidence at the November 2, 2018 hearing (hereinafter their admitted exhibits are referred to as "Studios' Exhibit ___").

[2] *Id.*

[3] Studios' Exhibit 3.

     a.     In its answer, VidAngel asserted affirmative defenses under the Family Movie Act and the fair-use provision of the Copyright Act.[4]

     b.     Counts one through three of the counterclaim alleged that the Studios violated federal and state antitrust laws. Counts four through seven sought declaratory relief that VidAngel's disc-based and streaming filtering services did not violate the DMCA and the Copyright Act and were permitted under the Family Movie Act (the "Counterclaims").[5]

3.     After exchanging expedited discovery with VidAngel, consisting of approximately 2,000 pages of documents, the Studios filed a motion for a preliminary injunction.

4.     On December 12, 2016, Judge Birotte granted the Studios' motion for a preliminary injunction, holding: (1) the Studios were likely to succeed on their copyright infringement claims; (2) VidAngel was unlikely to succeed on its defenses; and (3) the Studios had demonstrated a likelihood of imminent, irreparable injury (the "Injunction").[6]

5.     Eight months later, the Ninth Circuit affirmed the Injunction.[7] The Ninth Circuit held that because VidAngel did not use authorized copies of movies to provide its filtering services, it was unlikely to prevail on its argument that the Family Movie Act exempted it from liability for copyright infringement. It further held that VidAngel was unlikely to succeed on its "fair use" defense.

---

[4] *Id.*

[5] *Id.*

[6] *Disney Enters., et al. v. VidAngel, Inc.*, 224 F. Supp. 3d 957 (C.D. Cal. 2016).

[7] *Disney Enters., Inc. et al. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017).

6.      While appealing the Injunction, VidAngel asserted it had a new "stream-based" model that would not violate copyright laws.

7.      VidAngel then filed two motions for clarification that its modified streaming service was outside the scope of the Injunction.

8.      The California District Court denied both motions, finding that VidAngel was essentially, and inappropriately, seeking declaratory relief, and making clear that, regardless of the label used to describe its service (stream-based or disc-based), the Injunction bars VidAngel from violating the Studios' rights under the DMCA or violating the Studios' copyrights.[8]

9.      On August 10, 2017 Judge Birotte granted the Studios' motion to dismiss VidAngel's Counterclaims.[9] As to the counterclaims for declaratory relief, the court stated: "Each of the issues that VidAngel raises in its claims for declaratory relief will be decided through Plaintiff's claims in this action or Defendants affirmative defenses thereto. Because this would amount to duplicative litigation, the Court, in its discretion, denies VidAngel's fourth through seventh claims for declaratory relief."[10]

---

[8] *Disney Enters., et al. v. VidAngel, Inc.*, 224 F. Supp. 3d 957 (C.D. Cal. 2016). Docket Nos. 198 & 207; *see also* Studios' Exhibit 10.

[9] *Disney Enters., et al. v. VidAngel, Inc.*, 2:16-cv-04109 2017 U.S. Dist. LEXIS 221689 (C.D. Cal. Aug. 10, 2017). *See also Disney Enters., et al. v. VidAngel, Inc.*, 734 Fed. Appx. 522 (9th Cir. 2018) (affirming Judge Birotte's denial of VidAngel's motion to amend its counterclaims).

[10] *Id.* at 33-34.

10.    On August 31, 2017, VidAngel filed a declaratory relief action in the United

States District Court for the District of Utah (the "Utah District Court" or the "Utah

Declaratory Relief Action").[11] VidAngel amended its complaint on September 22, 2017.[12]

      a.    The Utah Declaratory Relief Action named a dozen film studios, all

corporate affiliates and business partners of the California Plaintiffs, as

defendants. Three of the defendants in the Utah Declaratory Action—Marvel, new

Line, and Turner—are also Plaintiffs in the California Action.

      b.    The Utah Declaratory Relief Action sought a ruling that VidAngel's

new stream-based service and "hybrid" service did not violate copyright laws;

essentially the same issues the California District Court had addressed in response

to VidAngels' motions to clarify

11.    On September 28, 2017, Judge Birotte entered a scheduling order on the

Copyright Complaint, which set a five to seven-day trial starting June 5, 2018.

12.    On September 29, 2017, the Studios filed a Motion for Partial Summary

Judgment as to VidAngel's liability under the DMCA and the Copyright Act.[13]

13.    On October 18, 2017, two days before its opposition to the motion for

summary judgment was due, VidAngel filed this bankruptcy case.

**B. VidAngel's Bankruptcy Case**

14.    VidAngel, Inc. filed for Chapter 11 relief on October 18, 2017.

---

[11] Complaint, *VidAngel, Inc. v. Sullivan Entm't Grp., Inc. et al.*, Civil No. 2:17-cv-00989-DN (D. Utah Aug. 31, 2017),  Docket No. 2.

[12] Studios' Exhibit 18.

[13] Studios' Exhibit 13.

15.     The Debtor's Statement of Financial Affairs, filed on November 1, 2017, indicated that VidAngel had $3,449,285 in cash.[14] VidAngel's most recently filed monthly operating report for the period ending September 30, 2018 lists an ending cash balance of $1,896,075.[15] This is decrease of over $1.5 million in cash since the petition date.

16.     Since filing the petition, the Court has awarded Baker Marquart, VidAngel's litigation counsel, over $200,000 in fees.[16] Of that amount, all but $4,300 was for litigation of the Utah Declaratory Relief Action.[17] In addition, the Court awarded Debtor's counsel $20,430.50 for "non-bankruptcy litigation involving the Debtor in the federal courts."[18] Thus, VidAngel has incurred over $216,000 in fees pursuing its litigation in other courts.

17.     On November 8, 2017, the Studios filed a motion to dismiss the Debtor's bankruptcy case, or, in the alternative, to grant relief from stay.[19]

18.     At the hearings on the motion to dismiss, VidAngel stated that they had switched their filtering service from a disc-based model to a new streaming model. Thus, VidAngel argued that it needed additional time to move customers to the new streaming service, and to allow the Utah District Court to rule on its complaint for declaratory relief. The parties agreed to continue without date a ruling on the motion for relief from stay pending a resolution or other disposition of the Utah Declaratory Relief Action.[20]

---

[14] Docket No. 47.

[15] Docket No. 236.

[16] Docket No. 188.

[17] Docket No. 174.

[18] Docket Nos. 168 and 177.

[19] Docket No. 69.

[20] Docket Nos. 117 and 119.

19.    On February 14, 2018, the Studios filed unsecured proofs of claim for copyright damages in an amount to be determined by the California District Court.[21] Those claims expressly reserved the Studios' right to a jury trial, to contest this Court's jurisdiction, and to have the claims liquidated by the California Court.

20.    On February 15, 2018, VidAngel filed a complaint in the bankruptcy case against the Studios (the "Bankruptcy Adversary Proceeding").[22]

    a.    The first cause of action seeks the disallowance of the Studios' claims under 11 U.S.C. § 502.

    b.    The second cause of action incorporates the fourth through seventh causes of action that VidAngel asserted in its Counterclaim in the California Action that were dismissed by Judge Birotte. These causes of action seek a declaratory judgment that VidAngel's filtering technologies do not violate copyright laws.[23]

21.    On the same day, VidAngel filed a motion to withdraw the reference, asking the Utah District Court to hear the Bankruptcy Adversary Proceeding.

22.    On November 1, 2018, Judge Nuffer entered his order withdrawing the reference as to the Bankruptcy Adversary Proceeding and ordered the parties to file briefs "addressing why the Adversary Complaint should not be dismissed for lack of jurisdiction or other good cause."[24]

---

[21] Proofs of Claims 5-1 to 11-1.

[22] Adversary Complaint, Case No. 18-02016.

[23] *Id.* at 5-6.

[24] Docket Nos. 242 & 243.

23.     No creditors' committee has been formed in the Chapter 11 case.[25] According to the United States Trustee, there were "too few unsecured creditors willing to serve for the United States Trustee to form a Creditors' Committee."[26]

24.     On September 10, 2018, VidAngel filed its third motion to extend the exclusivity period for filing a reorganization plan. The Studios objected to the extension. Due to the pending motion for relief from stay and the recent dismissal of the Utah Declaratory Relief Action, the Court extended the exclusivity period through January 14, 2019.[27]

### C.  VidAngel's Declaratory Judgment Action in the Utah District Court

25.     On August 31, 2017, VidAngel filed the Utah Declaratory Relief Action against various other film studios including Marvel, New Line and Turner along with several corporate affiliates and business partners of the Studios.

26.     In its SEC Form 1-SA for June 30, 2017, VidAngel stated the following:

We filed this action to gain confirmation that our new technology and business models comply with legal requisites in all respects, avoid the prospect of again litigating in an unfavorable forum, and protect ourselves from claims by the Disney Litigation Plaintiffs that the preliminary injunction entered therein applies to business models never contemplated by the court.[28]

27.     On October 26, 2017, the defendants in the Utah Declaratory Relief Action filed a Motion to Dismiss, or, in the alternative, to Transfer or Stay, based in part on lack

---

[25] Docket No. 91, Office of the United States Trustee for the District of Utah § 341 Meeting Minute Entry filed Nov. 16, 2017.

[26] Statement of the United States Trustee Regarding Creditors' Committee filed Nov. 20, 2017.

[27] Docket No. 239.

[28] Studios' Exhibit 70 at pg. 30.

of personal jurisdiction, and asserting that the case was an improper attempt at procedural fencing, in violation of the federal first-to-file rule.

28.    On July 27, 2018, Judge Nuffer issued an Order holding that the Utah District Court lacked general and specific personal jurisdiction over the defendants. Judge Nuffer gave VidAngel the option of having its declaratory relief claims transferred to the Central District of California pursuant to 28 U.S.C. § 1631, or to dismiss its causes of action.[29]

29.    On August 3, 2018, VidAngel declined the offer to transfer the Utah Declaratory Relief Action to California, and VidAngel expressly consented to the dismissal of the Utah Declaratory Relief Action.

30.    On August 10, 2018, the Studios renewed their motion for relief from stay,[30] and on November 2, 2018 the Court conducted an all-day evidentiary hearing on the motion.

## IV.    RULING

The Studios' motion for relief from stay has been pending for more than a year. Originally, VidAngel asserted that the stay should remain in place while (1) it litigated the Utah Declaratory Relief Action and the Bankruptcy Adversary Proceeding; and (2) while it transitioned to its new stream-based filtering service. VidAngel also hoped it could resolve the Studios' copyright claims in the context of the claim allowance process under § 502.

---

[29] Studios' Exhibit 22.

[30] Docket No. 196.

Now that the Utah District Court has dismissed the Utah Declaratory Relief Action, the Studios have reasserted their request for relief from stay to proceed with the prosecution of the Copyright Complaint against VidAngel in the California District Court. In its response, VidAngel primarily argues that the stay should remain in place, at least until the summer of 2019, to give it an opportunity to grow its business and strengthen its financial ability to pay any judgment that might be entered in the California Copyright Litigation. This is a change from VidAngel's original argument that the copyright litigation could be resolved in the Utah Bankruptcy Court or the Utah District Court – which now seems improbable.

The developments since the filing of the motion for relief from stay and the hearing a year later has shifted the Court's focus. Rather than limiting its analysis to the *Curtis* factors, as discussed below, the Court must also weigh whether these post-petition developments merit granting immediate relief from stay versus giving VidAngel an additional eight to nine months of protection under the automatic stay.

For the following reasons, the Court finds that the Studios have established sufficient cause to grant relief from stay without further delay.

### A. The *Curtis* Factors

The *Curtis* factors have long provided guidance in assessing the merits of a motion for relief from stay to allow the continued prosecution of litigation pending at the time of the bankruptcy filing. [31] *Curtis* applies a multi-factor analysis without a single dipositive factor. The Court discusses each applicable factor in turn. [32]

---

[31] *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).

[32] The fact that certain *Curtis* factors are not implicated or are neutral (e.g., insurance coverage, third-party exposure) does not make lifting the stay inappropriate. The *Curtis* factors are to be used as guidepost. *See*

*Factor 1: Whether the relief will result in a partial or complete resolution of the issues.*

The Studios argue that relief from the stay will allow for a complete resolution of its claims against VidAngel under the Copyright Complaint, including a jury determination of damages. The Court agrees.

The presence of pending litigation at the time of a bankruptcy filing is not uncommon. When the causes of action are based on non-bankruptcy law, and the litigation was beyond its initial stages, bankruptcy courts generally grant relief from stay to allow the court with original jurisdiction to liquidate the claim for purposes of administration in the bankruptcy case.

For example, in *In re Touchstone Home Health*, the parties had been engaged in an extensive arbitration proceeding that was headed to a final hearing.[33] After the bankruptcy filing, the court granted relief from stay to complete the arbitration because it would conclusively liquidate the creditor's claim in bankruptcy: "The Debtor may owe the [plaintiff] the full amount of the Claim, or nothing, or something in between. Liquidating the amount of the Claim would fully resolve the underlying dispute."[34] Likewise, in *In re Horizon Womens Care Professional LLC*, the bankruptcy court rejected the debtor's argument that the claims allowance/disallowance process should be used to

---

*Curtis*, 40 B.R. at 799 (Noting that "[a]lthough Section 362 does not attempt to define the parameters of the term "for cause," case law under the Code has recognized certain relevant factors which may be considered in making a determination of whether or not to modify the stay to permit litigation against the debtor to proceed in another forum.").

[33] *In re Touchstone Home Health LLC*, 572 B.R. 255 (Bankr. D. Colo. 2017).

[34] *Id.* at 282.

resolve the creditor's pre-petition claim.[35] The court explained that liquidating claims and allowing (or disallowing) them "are wholly separate matters" and "[g]ranting relief from stay will result in complete resolution of the state court litigation."[36]

Furthermore, both this Court and the Utah District Court lack jurisdiction to decide the copyright claims. Thus, the California District Court is presently the only court that can decide all of the causes of action asserted in the Copyright Complaint.

VidAngel argues that a completion of the California Action will not resolve the issues confronting it in the bankruptcy case. However, this *Curtis* Factor is focused on a resolution of the pre-petition litigation and not any resulting bankruptcy issues. The California District Court will determine liability and then, if applicable, liquidate damages. This Court will then decide the core bankruptcy issues regarding the treatment of such claims for purposes of the Chapter 11 plan.

Relief from stay also supports a complete resolution of the issues because if the copyright litigation is decided by the California District Court, the parties can directly appeal to the Ninth Circuit. In contrast, appeals from this Court would first go to the Tenth Circuit Bankruptcy Appellate Panel or the Utah District Court, and then to the Tenth Circuit Court of Appeals. Avoiding an intermediary appeal from the bankruptcy court will facilitate a final resolution of the parties' copyright dispute.

Because continuation of the California Action will result in a complete resolution of the Studios' claims against VidAngel, this factor favors the Studios.

---

[35] *In re Horizon Womens Care Prof'l LLC*, 506 B.R. 553 (Bankr. D. Colo. 2014).

[36] *Id.* at 558.

*Factor 2: The lack of any connection with or interference with the bankruptcy case.*

Clearly, the Studios' copyright claims have a direct connection with the bankruptcy case. However, as noted in *Touchstone*, if the subject of the pre-petition litigation is discrete, and its resolution can occur in the original judicial forum more expeditiously than in the bankruptcy court, relief should be granted to allow it to proceed.[37]

The copyright litigation is discreet in that it is limited to infringement and damages. VidAngel asserts it can confirm a plan without knowing the liquidated amount of the Studios' damages. However, the Studios' damages range from $950,000 to $152.5 million.[38] Leaving such potentially significant claims unliquidated substantially complicates plan confirmation and prevents other parties in interest from making informed decisions about supporting the plan.

Furthermore, the Court has already extended VidAngel's exclusivity period to file a plan three times to January 14, 2019. The exclusivity period for plan acceptance cannot be extended beyond twenty months from the petition date, which would be June 18, 2019.[39] From the evidence, it appears that the Studios' claims could be resolved before this final deadline expires. Therefore, the Court concludes at this time it is appropriate to liquidate the Studios' claims as soon as practicable.[40] Because the California District Court is the first-filed court, and because the California Copyright Litigation had a pending

---

[37] *In re Touchstone Home Health LLC*, 572 B.R. at 282.

[38] Studios' Exhibit 70 at pg. 9.

[39] *See* 11 U.S.C. § 1121(d)(2).

[40] *See In re Marvin Johnson's Auto Service, Inc.*, 192 B.R. 1008 (Bankr. N.D. Ala. 1996) (debtor could not propose plan until potentially large verdict was liquidated in pending state-court action).

motion for summary judgment at the time of the bankruptcy filing, it is the most expeditious forum to resolve the copyright dispute.

VidAngel also argues that forcing it to litigate in the California District Court will substantially interfere with its Chapter 11 reorganization and tax its limited resources. However, this argument is less persuasive because VidAngel was willing to simultaneously prosecute its Utah Declaratory Relief Action and the Bankruptcy Adversary Proceeding in the Utah District Court. Indeed, in July of 2018, the Court awarded VidAngel's attorneys over $216,000 in fees for litigating the copyright disputes. Furthermore, the evidence established that while the California Litigation costs will reduce VidAngel's cash on hand, the worst-case scenario is that VidAngel will have no less than $569,000 on hand at the completion of the California Litigation.[41] In addition, VidAngel's litigation attorney, Mr. Quinto, testified in his deposition that because the Studios were seeking statutory damages, there would be less discovery and less need for experts. As a result, he estimated that the litigation costs used in VidAngel's projections would decrease by "several hundred thousands."[42]

The Court also agrees with the cases holding that the costs of continuing with pending litigation is not a dispositive factor in granting relief from stay.[43] Even if litigation costs were dispositive, the Court finds that the Debtor can afford such costs while proceeding with its reorganization.

---

[41] VidAngel's Exhibit E at VID2000001.

[42] Studios' Exhibit 66, Quinto Dep. Tr. 109:1—17.

[43] *See In re Bison Resources, Inc.*, 230 B.R. 611, 617 (Bankr. N.D. Okla. 1999) and cases cited therein. *Accord*, *In re Project Orange Assocs., LLC*, 432 B.R. 89, 106 (Bankr. S.D.N.Y. 2010); *In re Santa Clara Cty. Fair Ass'n, Inc.*, 180 B.R. 564 (9th Cir. BAP 1995).

After a year of bankruptcy protection, VidAngel has been unsuccessful in its litigation strategy before the Utah District Court, the California District Court, and the Ninth Circuit Court of Appeals. The liquidation of the Studios' alleged claim is now in limbo. This Court lacks constitutional authority to decide the copyright litigation, the Utah District Court lacks personal jurisdiction to decide the copyright litigation, and the California District Court is stayed from deciding the copyright litigation. Yet, the copyright litigation must be decided before VidAngel can proceed with a plan of reorganization. These circumstances favor granting relief from stay.

*Factor 4: Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.*

Certainly the California District Court is not a "specialized tribunal" in the sense that it only hears copyright infringement cases. However, the California District Court has extensive history and experience with the parties, their claims, and their defenses and has already issued a comprehensive decision affirmed by the Ninth Circuit. Additionally, the Studios' summary judgment motion is still pending before the California Court. This gives the California District Court greater expertise as to the specific facts and law relevant to a resolution of the Copyright Complaint. It would require an excessive amount of resources both by the parties and another court to arrive at the same level of knowledge and expertise. Thus, the California District Court has the greater expertise in deciding the copyright dispute between these parties.

An additional consideration is that this Article I court lacks constitutional authority to rule on the Studios' private right, common law claims for copyright

infringement.[44] As an Article III Court, the California Court is the tribunal in which copyright infringement and DMCA claims are typically resolved, and the California Court has the power to empanel a jury to decide damages. Further, the Utah District Court lacks personal jurisdiction to decide the Utah Declaratory Relief Action, and it has raised questions about its jurisdiction to hear the Bankruptcy Adversary Proceeding. Thus, in a matter of speaking, the California District Court is a "specialized" court as it is presently the only court with competent jurisdiction to rule on the Copyright Complaint. These facts favor granting relief from stay.

*Factors 5 and 6: Whether the debtor's insurer has assumed full responsibility for defending it, and; whether the action primarily involves third parties.*

VidAngel argues that because it does not have insurance coverage, all expenses of litigating in the California District Court will be paid as an administrative expense to the detriment of all other creditors. However, VidAngel will incur an administrative expense claim for legal fees no matter where it litigates the Copyright Complaint. Indeed, given the amount of work already done in the California District Court and the fact that VidAngel's litigation attorneys are located in California,[45] it seems that VidAngel's litigation costs will be less in that forum.[46] Thus, these factors are at best neutral to maintaining the stay.

---

[44] *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015); *Feltner v. Columbia Pictures Television, Inc.*, 118 S. Ct. 1279 (1998) (copyright owner has Seventh Amendment right to a jury determination of damages under the Copyright Act).

[45] VidAngel's attorneys in the California Action (the Baker Marquart firm) and its General Counsel (David Quinto) are all based in Los Angeles, California.

[46] VidAngel argued that litigation in the District of Utah is more economical because the witnesses and discovery documents are in Utah and that the Utah court system is more congenial and less litigious than California. While Utah may be the best site for conducting discovery, that alone is not conclusive as to the

*Factor 7: Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.*

If the Studios obtain a significant judgment and a permanent injunction in the California Copyright Litigation, it will have an impact on other creditors, including VidAngel's subscribers. However, these creditors and subscribers do not have rights that can be asserted in the California Copyright Litigation. Thus, the California Copyright Litigation will not alter the subscribers' rights or preclude their assertion in the bankruptcy case. Indeed, if anything, VidAngel's present and future subscribers are entitled to know if VidAngel will be able to filter the Studios' movies.

Further, the fact that the litigation may dilute the ultimate return to other creditors does not constitute legal prejudice to the rights of such creditors.[47] Thus, the Court finds that the California Copyright Litigation will not prejudice the interests of other creditors in the manner contemplated by this factor.

*Factor 10: The interest of judicial economy and the expeditious and economical determination of litigation for the parties.*

As explained in *Touchstone*, the "interests of judicial economy and efficiency" are "best-served" by liquidating claims before the court that "knows the parties and the factual and legal issues" and can schedule final hearings "in short order."[48]

The Studios represented at the hearing that they were limiting their copyright damages to the statutory amount under 17 U.S.C. § 504(c). Both sides agreed that this

---

costs of litigation. As to the second point, the evidence is not conclusive that litigating in Utah will indeed be more congenial and thus less expensive.

[47] *In re Horizon Womens Care Prof'l LLC*, 506 B.R. 553, 559 (Bankr. D. Colo. 2014).

[48] *In re Touchstone Home Health LLC*, 572 B.R. 255, 282 (Bankr. D. Colo. 2017).

would simplify the time and discovery required for a jury to decide damages. Indeed, Mr. Quinto testified that this would likely save "several hundred of thousands" in completing the copyright litigation. The Court views this as evidence of the Studios' good faith to expeditiously resolve this matter. The Court expressed its concern at the hearing that if relief from stay is granted, the Studios might attempt to bury VidAngel in litigation. The Court was assured by the Studios that they would only seek relief for the causes of action previously alleged in the Copyright Complaint – first by prosecuting the motion for summary judgment as to liability, and then setting the matter for a week-long jury trial to determine damages. The Court anticipates the Studios will proceed in the manner represented at the hearing – absent new or additional issues raised by VidAngel in the California Copyright Litigation. Thus, the Court finds this proposal to be the most expeditious and economical way to resolve the copyright litigation.

VidAngel has suggested that the Bankruptcy Court could estimate the Studios' claims under the § 502(c). However, this is both impractical and inefficient. Bankruptcy law favors liquidation over estimation, as estimation, "by its very nature [is] a second-best method of arriving at the amount of an unliquidated . . . claim."[49] VidAngel has not made a motion for the Court to estimate the claims and cannot do so in a supplemental brief.[50] Even if this Court were to estimate the Studios' claims for purposes of confirming the Debtor's Chapter 11 Plan, the Studios' claims would still need to be liquidated by the California Court before distribution, rendering an estimation process duplicative.

---

[49] *In re N. Am. Health Care, Inc.,* 544 B.R. 684,689 (Bankr. C.D. Cal. 2016).

[50] Local Rule 9013-1(e)(4) bars making a motion in response to another motion.

More importantly, the Studios have a constitutional right to a jury trial in before an Article III tribunal. This right to a jury trial for copyright damages cannot be supplanted by a claim estimation under § 502(c). Thus, even if the Court did estimate the claim for purposes of the bankruptcy case, the Studios are still ultimately entitled to have their claims decided by a jury in the California District Court. Thus, the estimation of the Studios' claims would be inefficient and duplicative.

In the twelve months since the bankruptcy filing, the circumstances of this case now favor lifting the stay. This will allow the Studios' claims to be liquidated in the court that is not only the most familiar with the matter, but also has the constitutional authority to enter a final judgment. This factor favors the Studios.

*Factor 11: Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.*

At the time of the bankruptcy filing, the Studios had a pending motion for summary judgment as to VidAngel's liability for copyright infringement. Furthermore, a five-day trial was set for June 2018, less than eight months from VidAngel's petition date. The Studios represent that if relief from stay is granted, they will renew their motion for summary judgment and seek a trial setting on the first available date.

The Court has reviewed the Studios' motion for summary judgment. It consists of around a dozen pages, and it does not contain a complex set of alleged, undisputed facts. The summary judgment motion seeks a ruling that (1) VidAngel circumvented technological protection measures so it could copy the video discs before filtering them for customers in violation of the Digital Millennium Copyright Act; and (2) that VidAngel

infringed on the Studios' copyrights when allowed it customers to view the copied movies.[51]

VidAngel argues that discovery must be completed before going to trial. Given the factual evidence already considered by Judge Birotte in granting the preliminary injunction, given that the Ninth Circuit affirmed Judge Birotte's legal conclusions that the Studios were likely to prevail on their Copyright Complaint, and given that the Studios have agreed to limit damages to the statutory amount, the Court is not persuaded that extensive additional discovery is required to resolve the California Copyright Litigation.

Thus, proceedings in the California District Court have progressed to the point where it is possible to have a final resolution of this litigation within approximately six months or less. This factor favors the Studios.

*Factor #12: The impact of the stay on the parties and the "balance of hurt."*

VidAngel argues that it will suffer harm if the stay is lifted because the energy and expense of defending itself in the California Copyright Litigation will detract from its ability to grow its business and create original content to stream to its subscribers. As noted above, the Court is less persuaded by this point because VidAngel has spent the last year actively pursuing the Utah Declaratory Relief Action. Shifting its focus to the California Copyright Litigation should not be a significantly greater distraction.

The Court has balanced the hurt between the parties, but it has included in its calculus the fact that VidAngel has had the benefit of the stay for over a year. The Court finds that the Studios proceeded in good faith when they agreed last November to

---

[51] Studios' Exhibit 13.

Case 17-29073   Doc 252   Filed 11/09/18   Entered 11/09/18 14:15:05   Desc Main
Document     Page 21 of 27


postpone a final hearing on their motion for relief from stay pending the outcome of the Utah Declaratory Relief Action. VidAngel expended its limited resources and time seeking relief in the Utah District Court only to have the case dismissed for lack of personal jurisdiction. Thus, the Debtor has had its opportunity to obtain alternative relief, but without success. As a result, the bankruptcy case has been pending for more than a year, VidAngel's cash on hand has decreased by $1.5 million, and VidAngel is no closer to resolving the "elephant in the room" that is the Studios' claims for copyright infringement.

Despite its unsuccessful litigation efforts, VidAngel has expressed its continuing intent to obtain declaratory relief and perhaps free itself from the likely outcome of the California Copyright Litigation. In *In re Scarborough-St. James Corp*, a debtor protected by the stay actively pursued its litigation interests by removing a state-court action to federal court and filing an adversary proceeding in the bankruptcy case.[52] In granting a motion for relief from stay, the Delaware bankruptcy court held: "Thus, it appears that Debtor is not shying away from litigation; rather, Debtor seeks to litigate only issues of its choosing and in its preferred forum. Debtor is using its bankruptcy case as a 'sword' and not a 'shield.'"[53]

Like the debtor in *Scarborough*, VidAngel, while entitled to the "breathing space" provided by the bankruptcy stay, has actively used this respite to seek alternative relief against the Studios. This Court finds that the passage of time, the unsuccessful litigation

---

[52] *See In re Scarborough-St. James Corp.*, 535 B.R. 60, 70 (Bankr. D. Del. 2015).

[53] *Id.* at 70. *See also In re Santa Clara Cty. Fair Ass'n, Inc.*, 180 B.R. 564, 567 (9th Cir. BAP 1995) (Congress did not intend that a debtor use the stay "to defer or deflect resolution of claims against it by another forum with proper jurisdiction."); *In re Dennen*, 539 B.R. 182, 187 (Bankr. D. Colo. 2015) (delay of final determination of pending litigation is a "legally cognizable harm" to the non-debtor party).

Page 21 of 27

efforts, and the decline in available cash are all facts that swing the balance of harm back to the Studios.

*Factors # 3, 8, and 9 are not relevant to this case.*

The Court finds the remaining *Curtis* Factors to be irrelevant to this matter, including: (3) "[w]hether the foreign proceeding involves the debtor as a fiduciary;" (8) "[w]hether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);" and (9) "[w]hether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)."

In sum, all the relevant *Curtis* factors, except for Factors No. 5 and 6, which are neutral, favor granting relief from stay.

### B. Likelihood of Success in the California District Court.

While the Tenth Circuit has not expressly adopted the *Curtis* factors, it has placed great emphasis on the movant's likelihood of success in the foreign court. In *In re Gindi*, it held there is "one factor that can be dispositive in determining whether a party can successfully move for relief from the automatic stay under § 362(d)(1)—namely, the likelihood that the movant would prevail in the litigation if the stay were lifted."[54] As expanded on by *In re Hruby*, this does not require the court to make such a finding before granting relief from stay. Indeed, *Hruby* opines that bankruptcy courts should avoid handicapping the outcome of such litigation out of respect for the foreign tribunal.[55]

---

[54] *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), *rev'd on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) (reversing prior holding that automatic stay does not prevent debtor from pursuing an appeal, even if appeal is from a creditor's judgment against debtor).

[55] *In re Hruby*, 512 B.R. 262 (Bankr. D. Colo. 2014).

However, in this case, the California District Court and the Ninth Circuit have already found that the Studios are likely to prevail on their copyright infringement claims against VidAngel. As held by the Tenth Circuit, this factor is dispositive in determining whether to grant relief from stay.

### C. The Factors Favoring Immediate Relief from the Stay.

Lastly, the Court makes the following separate findings, with some overlap with the *Curtis* factors, in deciding that it is now appropriate to grant the Studios relief from stay without further delay.

First, at the time of the bankruptcy filing, the California Copyright Litigation had progressed to the point that the Studios had obtained a preliminary injunction; the Studios had obtained dismissal of VidAngel's Counterclaims; the Studios had filed a twelve-page motion for summary judgment as to VidAngel's copyright liability; and the California District Court had set the matter for a five to seven day trial starting in June of 2018. Thus, but for VidAngel's bankruptcy filing, the California Copyright Litigation would already be decided either by summary judgment and/or by trial.

Second, for more than a year, the automatic stay has provided VidAngel with a break from the California Copyright Litigation. However, during this time, it has pursued its legal strategy of obtaining a declaratory determination in the Utah District Court that its new filtering techniques do not violate copyright laws. Unfortunately for VidAngel, these efforts have been unsuccessful. During the bankruptcy case, the Ninth Circuit affirmed the California District Court's denial of VidAngel's motion to amend its Counterclaims. The Utah District Court dismissed the Utah Declaratory Relief Action for lack of jurisdiction, and VidAngel declined to transfer its claims to the California District

Court. Lastly, while the Utah District Court has withdrawn the reference, it has also raised concerns as to the propriety of hearing the Bankruptcy Adversary Proceeding. At this point, VidAngel appears to be without a forum to resolve its copyright dispute with the Studios – other than to return to the California District Court.

Third, VidAngel requests that the Court delay granting relief from stay until the summer of 2019 so that it can grow its business and improve its cash flow without the distraction and costs of litigating in the California District Court. The Court received evidence that while the projected litigation costs would impact VidAngel's cash on hand, they were not fatal to VidAngel's reorganization efforts. More importantly, VidAngel's argument loses much of its vitality because the evidence also showed that VidAngel has spent more than $216,000 in litigation costs pursuing the Utah Declaratory Relief Action. VidAngel willingly incurred litigation costs unsuccessfully seeking the relief it wanted in the forums of its choosing. Now that those efforts have proven unsuccessful, it is appropriate to require VidAngel to focus on a resolution of California Copyright Litigation.

Third, the Court has weighed the balance of harm to the parties. Given the passage of time, the lack of success at obtaining relief in other forums, and the decline in VidAngel's cash on hand since the bankruptcy filing, the balance of harm has shifted in favor of granting relief from stay.

Fourth, based on the evidence and VidAngel's out-of-court statements, the Court must conclude that a material motivation in VidAngel's litigation strategy over the past

year was indeed to "avoid the prospect of again litigating in an unfavorable forum."[56] This is forum shopping. VidAngel must return to the California District Court to resolve the copyright litigation.

These findings inform the Court's decision that it is now appropriate to now grant the Studios relief from stay to pursue the California Copyright Litigation.

## V.   CONCLUSION

The Court is aware of and sensitive to the Congressional intent expressed in the Family Movie Act that individuals should be able to filter content they find objectionable when viewing movies in the privacy of their homes. However, there is a right way and a wrong way to comply with the Family Movie Act, the Digital Millennium Copyright Act, and the Copyright Act. If a court of competent jurisdiction determines that VidAngel got it wrong, the Studios are entitled to damages from the unlawful streaming of their copyrighted movies.

VidAngel has had a year to resolve this dispute or to obtain alternative relief in another forum with appropriate jurisdiction. Those efforts were unsuccessful. The Studios, subscribers, other creditors, and potential lenders and investors are entitled to know the extent of damages arising from VidAngel's alleged violation of copyright laws and how these claims will factor into a plan of reorganization. Allowing the California Copyright Litigation to proceed will not be fatal to VidAngel's prospects for reorganization. Given the status of proceedings in the California Copyright Litigation, it should not require an unreasonable amount of time and money to arrive at a final

---

[56] Studios' Exhibit 53.

judgment on the matter. For these reasons, the Court finds that the California Copyright Litigation should be resolved sooner rather than later, and that the Studios have established cause to grant relief from stay to allow the California District Court to rule on the causes of action in the Copyright Complaint.

END OF DOCUMENT

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION GRANTING THE STUDIOS'
MOTION FOR RELIEF FROM STAY** shall be served to the parties and in the manner
designated below:

**By Electronic Service**: to the parties identified below as registered CM/ECF users.

- J. Thomas Beckett tbeckett@parsonsbehle.com, ecf@parsonsbehle.com;
  brothschild@parsonsbehle.com; kstankevitz@parsonsbehle.com
- Michael Ronald Brown  mbrown@parsonsbehle.com
- Laurie A. Cayton tr laurie.cayton@usdoj.gov, James.Gee@usdoj.gov;
  Lindsey.Huston@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- Rose Leda Ehler rose.ehler@mto.com, cynthia.soden@mto.com
- Michael R. Johnson mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Kelly M. Klaus kelly.klaus@mto.com
- David H. Leigh dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- Grace S. Pusavat gpusavat@parsonsbehle.com
- Brian M. Rothschild brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov