**This order is SIGNED.**

**Dated: September 4, 2020**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*Prepared by:*

George Hofmann (10005)
Matthew M. Boley (8536)
Jeffrey Trousdale (14814)
Caitlin McKelvie (16511)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300

Attorneys for George Hofmann, Chapter 11 Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| In re: | Bankruptcy No. 17-29073 (KRA) |
|---|---|
| VIDANGEL, INC., | Chapter 11 |
| Debtor. | |

## FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION
## OF JOINT PLAN OF REORGANIZATION AND APPROVAL OF SETTLEMENT
## AGREEMENT BETWEEN VIDANGEL, STUDIOS, AND HARMONS

This matter came before the Court on September 4, 2020 at 10:00 a.m. (the "Confirmation Hearing") to consider (a) confirmation of the *Joint Plan of Reorganization of Trustee and Studios Under Chapter 11 of the Bankruptcy Code* [Docket No. 849] (the "Joint Plan"), (b) the *Trustee's Second Amended Motion to Modify Plan and Motion to Confirm Modified Joint Plan* [Docket No. 839] (the "Motion to Modify Plan"), and (c) the *Trustee's Motion for Entry of an Order Approving Settlement Agreement Between VidAngel, Studios, and Harmons* (the "Settlement Motion") [Docket No. 840], all filed by

{00511614.DOCX / 4}

George Hofmann (the "Trustee"), in his capacity as the Chapter 11 Trustee of VidAngel, Inc. (the "Debtor"), the Debtor in the above-referenced chapter 11 bankruptcy case (the "Case").[1]

Matthew M. Boley, Jeffrey Trousdale, and Caitlin McKelvie appeared on behalf of the Trustee. Thomas Walper, Rose Ehler, and Michael Johnson appeared on behalf of Disney Enterprises, Inc., Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, Warner Bros. Entertainment Inc., MVL Film Finance, LLC, New Line Productions, Inc., and Turner Entertainment Co. (collectively, the "Studios"). Other counsel and parties-in-interest noted their appearances on the record.

Based upon the Joint Plan, the *Ballot Tabulation Register* [Docket No. 768], the *Declaration of George Hofmann in Support of Confirmation of the Joint Plan of Reorganization and Motion to Approve Settlement Agreement Between VidAngel, Studios, and the Harmons* [Docket No. 852], the *Declaration of Mark Hashimoto in Support of Confirmation of Joint Plan of Reorganization* [Docket No. 853], the Settlement Motion, the Motion to Modify, other filings concerning the Joint Plan [*e.g.*, Docket Nos. 640, 668, 841, 843, 844, 850, 851 and 854], the statements of counsel, the evidence received at the Confirmation Hearing and other matters of record, and good cause appearing, the Court hereby

**FINDS AND CONCLUDES**[2] as follows:

A.    Exclusive Jurisdiction; Venue; Core Proceeding.  This Court has jurisdiction over the Bankruptcy Case[3] pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Joint Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction

---

[1]    The Studios are co-proponents of the Joint Plan.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. Pro. 7052.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings provided in the Joint Plan.

to determine whether the Joint Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.      Judicial Notice.  This Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Bankruptcy Court, including, without limitation, all pleadings, papers and other documents filed, all orders entered, and the transcripts of, and all minute entries on the docket indicating the evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Bankruptcy Case.

C.      Transmittal and Mailing of Materials; Notice.  All due, adequate, and sufficient notices of the Trustee's Plan (as defined in footnote 4 below), the Joint Plan, the Motion to Modify, the Confirmation Hearing, and the deadlines for voting on and filing objections to the Trustee's Plan, were given to all known Holders of Claims and Interests in substantial compliance with the Bankruptcy Rules and the Orders of this Court. See Docket Nos. 668, 843, 844 and 851. The Disclosure Statement, the Trustee's Plan, and relevant ballots were transmitted and served in substantial compliance with the Bankruptcy Rules and the Orders of this Court upon Creditors and Interest Holders entitled to vote on the Trustee's Plan, and such transmittal and service were, and are, adequate and sufficient.  No other or further notice of the Joint Plan, the Motion to Modify or the Confirmation Hearing is or shall be required.

D.      Solicitation.  The solicitation of votes for acceptance or rejection of the Joint Plan[4] complied with §§ 1125 and 1126,[5] Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and all other rules, laws and

---

[4]      The Trustee solicited acceptance of the Plan of Reorganization filed at Docket No. 596 ("**Trustee's Plan**"). As described in paragraph GG, below, the modifications to the Trustee's Plan which resulted in the Joint Plan do not adversely change the treatment of any Holders of Claims or Interests that voted to accept the Trustee's Plan, and, as to all accepting Classes, the modifications are "immaterial."

[5]      Unless otherwise provided, all references to statutory sections in these Findings and Conclusions using the section symbol "§" are to the relevant sections of the Bankruptcy Code.

regulations. The modification of the Trustee's Plan resulting in the Joint Plan complies with § 1127, and the holders of Claims and Interests who accepted the Trustee's Plan are deemed to accept the Joint Plan. Based on the record before the Court in the Bankruptcy Case, the Trustee and the Studios and their agents and representatives have acted in "good faith" within the meaning of § 1125, and they are entitled to the protections afforded by § 1125(e).

E.    <u>Distribution</u>.  All procedures used to distribute the solicitation materials to the applicable holders of Claims and Interests and to tabulate the ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the standing orders and local rules of the Bankruptcy Court, this Court's orders in this Case, and all other rules, laws, and regulations.

F.    <u>Creditors' Acceptance of Joint Plan</u>.  The Joint Plan establishes five Classes of Claims or Interests.  All impaired Classes of Claims have accepted the Joint Plan.  No impaired Class of Claims has rejected the Joint Plan.  The holders of Class 3 Claims initially voted to reject the Trustee's Plan, but are now joint-proponents of the Joint Plan which modifies the Trustee's Plan, and as such are deemed to accept the Joint Plan.  Class 2 initially voted to reject the Trustee's Plan, but the Joint Plan now provides that Class 2 Claims will be paid in full on the Effective Date and are unimpaired, and as such they are deemed to accept the Plan.

i.    Class 1 (Priority Claims) is unimpaired and will be paid in full on the Effective Date, and is deemed to accept the Joint Plan.

ii.    Class 2 (General Unsecured Claims) is unimpaired and will be paid in full on the Effective Date, and is deemed to accept the Joint Plan.

iii.    Class 3 (Studios' Claims) consists of the Studios, who are co-proponents of the Joint Plan. As such, Class 3 is deemed to accept the Joint Plan.

iv.      Class 4 (Credit Holders' Claims) voted to accept the Trustee's Plan, with 93% of Class 4 Claim Holders accepting the Trustee's Plan (representing 95% of the total dollar value voting). The modifications to the Trustee's Plan as set forth in the Joint Plan do not adversely change the treatment of Class 4, and as such, Class 4 is deemed to accept the Joint Plan because Class 4 previously accepted the Trustee's Plan.

v.      Class 5 (Equity Interest Holders) voted to accept the Trustee's Plan, with 95% of Class 5 Interest Holders accepting the Trustee's Plan (representing 98% of the total shares voting). The modifications to the Trustee's Plan as set forth in the Joint Plan do not adversely change the treatment of Class 5, and as such, Class 5 is deemed to accept the Joint Plan because Class 5 previously accepted the Trustee's Plan.

G.      <u>Joint Plan Complies with Bankruptcy Code</u>.  The Joint Plan, including all of the Plan Supplement Documents (e.g., the Promissory Note, the Security Agreement, the Stock Pledge and Security Agreement and the Covenant not to Compete), as supplemented and modified by the Confirmation Order (as modified and supplemented, the "Confirmed Joint Plan"), complies with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(1).

i.      <u>Proper Classification</u>.  The Claims placed in each Class are substantially similar to other Claims in such Class.  The Confirmed Joint Plan properly classifies Claims.  In addition to Administrative Expense Claims and Priority Tax Claims, which are not classified under the Confirmed Joint Plan, the Confirmed Joint Plan designates various separate Classes of Claims based on differences in their legal nature or priority.  Further, valid business, factual and legal reasons exist for separately classifying the various Classes of Claims under the Confirmed Joint Plan.  Finally, the Classes do not unfairly discriminate

between holders of Claims.  Thus, the Confirmed Joint Plan satisfies §§ 1122 and 1123(a)(1).

ii.      <u>Specify Unimpaired Classes</u>.  Article IV of the Confirmed Joint Plan specifies that Classes 1 and 2 are unimpaired, and Classes 4 and 5 are arguably unimpaired.  Thus § 1123(a)(2) is satisfied.

iii.      <u>Specify Treatment of Impaired Classes</u>.  Class 3 is designated as impaired, and Classes 4 and 5 are designated as arguably impaired, under the Confirmed Joint Plan.  Article IV of the Confirmed Joint Plan specifies the treatment of the impaired Classes of Claims and Interests, thereby satisfying § 1123(a)(3).

iv.      <u>No Discrimination</u>.  The Confirmed Joint Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment with respect thereto, thereby satisfying § 1123(a)(4).

v.      <u>Implementation of Joint Plan</u>.  The Confirmed Joint Plan provides adequate and proper means for its implementation, thereby satisfying § 1123(a)(5).  Among other things, Articles 5 and 6 of the Confirmed Joint Plan provide for: (a) the vesting of the property of the Debtor and its chapter 11 bankruptcy Estate in the Reorganized Debtor; (b) the formation, structure and management of the Reorganized Debtor; (c) the continuation of business operations by the Reorganized Debtor; (d) the execution and implementation of the Plan Supplement Documents; (e) the approval of the Settlement Agreement; and (f) distributions to creditors from the Reorganized Debtor's cash and other assets, including from additional cash, assets, and property generated or obtained after the Effective Date.

vi.      <u>Corporate Charter Provision Inapplicable</u>.  Section 1123(a)(6) is not applicable, as the Confirmed Joint Plan does not provide for the issuance of nonvoting equity securities. The Reorganized Debtor may issue new equity interests after the Effective Date, but such issuances are not governed by or required under the Confirmed Joint Plan. Any such issuances will comply with applicable law.

vii.      <u>Selection of Post-Confirmation Manager</u>.  The Confirmed Joint Plan designates and discloses that the Debtor's existing management will remain as the management of the Reorganized Debtor, and the Trustee will continue to serve for a limited period until discharged and released as contemplated in section 5.1 of the Confirmed Joint Plan.  The Debtor's management is critical to its ability to succeed as a going concern. As such, the retention of the Debtor's management is consistent with the interests of Creditors and with public policy. Thus, § 1123(a)(7) is satisfied.

viii.      <u>Additional Plan Provisions</u>.  The Confirmed Joint Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions respecting (a) the assumption and/or rejection of executory contracts and unexpired leases, (b) the retention and enforcement by the Debtor or the Trustee of claims under chapter 5 of the Bankruptcy Code and under applicable non-bankruptcy law, and (c) modification of the rights of holders of secured claims, thus satisfying the requirements of § 1123(b).

ix.      <u>Bankruptcy Rule 3016(a)</u>.  The Confirmed Joint Plan is dated and identifies the Trustee and the Studios as its co-proponents, thereby satisfying Bankruptcy Rule 3016(a).

H.      <u>The Confirmed Joint Plan and the Co-Proponents Comply with the Bankruptcy Code</u>.  The Confirmed Joint Plan complies with the applicable provisions of

the Bankruptcy Code.  Likewise, the Trustee and the Studios have each complied with the applicable provisions of the Bankruptcy Code.  Thus, §§ 1129(a)(1) and (a)(2) are satisfied. Among other things:

i.      the Trustee and the Studios are the proper proponents of the Confirmed Joint Plan under § 1121(c);

ii.      the Confirmed Joint Plan complies, and the Studios and the Trustee have complied, generally with applicable provisions of the Bankruptcy Code; and

iii.      the Trustee and the Studios have complied with the applicable provisions of the Bankruptcy Code, including § 1125, the Bankruptcy Rules and orders of the Bankruptcy Court in transmitting the Trustee's Plan, the Disclosure Statement, ballots, related documents and notices, and in soliciting and tabulating votes on the Trustee's Plan and in seeking confirmation of the Confirmed Joint Plan. As set forth above, the Confirmed Joint Plan does not materially change the treatment of Classes of Claims and Interests that previously accepted the Trustee's Plan, and renders Classes 1 and 2 unimpaired (and Classes 4 and 5 arguably unimpaired), such that they are conclusively deemed to accept the Confirmed Joint Plan.

I.      <u>Good Faith</u>.  The Confirmed Joint Plan is proposed in good faith and not by any means forbidden by law, and therefore complies with the requirements of § 1129(a)(3).  In determining that the Confirmed Joint Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the Bankruptcy Case and the formulation of the Confirmed Joint Plan.  Among other things, the Court finds:

i.      the Trustee and the Studios have proposed the Confirmed Joint Plan for a valid reorganizational purpose, and the Confirmed Joint Plan represents the fruit of substantial negotiations between the Settling Parties (*i.e.*,

the Studios, the Harmons, and the Debtor) which took place as part of a

mediation in which United States Bankruptcy Judge Joel T. Marker served as

mediator;

ii.     the Trustee has been, and is, actively prosecuting this Case;

iii.    the Trustee and the Studios proposed the Confirmed Joint Plan

with the legitimate and honest purpose of, among other things, restructuring the

Debtor's financial affairs, providing a meaningful return to all classes of creditors,

and settling the substantial disputes between the Settling Parties;

iv.     the Confirmed Joint Plan is the fruit of arms-length negotiations with

creditors, including input from and discussions with the Studios;

v.      the Confirmed Joint Plan contemplates that the claims of creditors

will be satisfied either by (a) cash distributions to the holders of allowed claims

from the continuation of normal business operations (with non-Studio creditors

being paid in full on the Effective Date from existing cash assets), or (b) in the

event that the Debtor defaults in its obligations under the Confirmed Joint Plan

and Plan Supplement Documents, enforcement of the Note and Security

Agreement by the Studios and the Compliance Lien granted to the Studios

pursuant thereto;

vi.     the Debtor has ongoing cash receipts and substantial assets to

fund repayment of creditor claims under the Confirmed Joint Plan, including to

meet all funding obligations that will be required on the Effective Date;

vii.    the Debtor has meaningful "cash flow" that will fund ongoing

operations of the Reorganized Debtor as well as payments to creditors and other

distributions under the Confirmed Joint Plan, as illustrated by the cash flow

projections submitted by the Trustee and his professionals;

viii.   there are available sources of cash flow to sustain the Confirmed Joint Plan;

ix.   this is not a case involving a single creditor;

x.   rather, there are multiple creditors;

xi.   the Debtor has a reasonable possibility of reorganization; and

xii.   the Confirmed Joint Plan is feasible, practicable and there is a reasonable likelihood that the Confirmed Joint Plan will achieve its intended results, which are consistent with the purposes of the Bankruptcy Code.

J.   <u>Payments for Services or Costs and Expenses</u>.  Any payment made, or to be made, under the Confirmed Joint Plan for services or for costs and expenses in or in connection with the Bankruptcy Case prior to the Effective Date, including all fees and expenses incurred by Professionals, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying § 1129(a)(4).

K.   <u>Manager(s) of the Reorganized Debtor</u>.  The Confirmed Joint Plan and/or the Disclosure Statement identify the Debtor's existing management and provide for their continued services with the Reorganized Debtor.  The proposed service of these individuals as post-confirmation officers is consistent with the interests of the holders of Claims and Interests and with public policy.  Therefore, the requirements of § 1129(a)(5) are satisfied.

L.   <u>No Rate Changes</u>.  The Confirmed Joint Plan satisfies § 1129(a)(6) because the Confirmed Joint Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

M.   <u>Best Interests of Creditors Test</u>.  The Confirmed Joint Plan satisfies § 1129(a)(7) with respect to all Classes of Claims and Interests. All impaired Classes have accepted the Trustee's Plan as modified, which modifications have resulted in the Confirmed Joint Plan. All Classes that have not accepted the Trustee's Plan by

affirmative vote are deemed to accept the Confirmed Joint Plan because, among other reasons, the holders of Claims and Interests in such classes are not impaired. In addition, the holders of all Classes of Claims and Interests will receive or retain under the Confirmed Joint Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the property of the Estate was liquidated under chapter 7 of the Bankruptcy Code on such date.

N.     <u>Acceptance by Certain Classes</u>.  All impaired Classes of Claims have accepted the Confirmed Joint Plan, as noted above, thereby satisfying § 1129(a)(8). All Classes that have not accepted the Confirmed Joint Plan by affirmative vote are deemed to accept the Plan because, among other reasons, the holders of Claims and Interests in such classes are not impaired. No Class of impaired Claims has rejected the Confirmed Joint Plan. Although the Studios previously rejected the Trustee's Plan, the Studios are joint-proponents of the Confirmed Joint Plan, and accept the terms of the Confirmed Joint Plan.

O.     <u>Treatment of Administrative Expense Claims and Priority Tax Claims</u>.  The Confirmed Joint Plan satisfies the requirements of § 1129(a)(9).  Except to the extent the holder of a particular Claim agrees to a different treatment, the Confirmed Joint Plan specifies that Administrative Expense Claims (including professional compensation) and Priority Tax Claims shall be paid as mandated by § 1129(a)(9) (except to the extent that a holder agrees otherwise).

P.     <u>Acceptance by at Least One Impaired Class</u>.  All Classes of Claims either are deemed to accept the Confirmed Joint Plan or affirmatively have voted to accept the Confirmed Joint Plan, as shown by the terms of the Confirmed Plan which render Classes 1 and 2 unimpaired, the Ballot Tabulation Register, the Settlement Motion, and other stipulations and filings of record, and the acceptance of at least one of such

accepting impaired Classes has been determined without including the votes of any insiders, thus satisfying § 1129(a)(10).

Q.     <u>Feasibility</u>.  The Confirmed Joint Plan is feasible and complies with § 1129(a)(11) because confirmation is not likely to be followed by a liquidation or the need for further financial reorganization of the Debtor.  The Confirmed Joint Plan offers a reasonable prospect of success and is workable. The Confirmed Joint Plan provides that the Debtor will continue business operation after the Effective Date. The Confirmed Joint Plan settles the substantial disputes between the Debtor and the Studios. The Trustee has presented credible evidence that the Debtor will have sufficient "cash flow" to satisfy its operating expenses and debt obligations after the Effective Date, and that it should have sufficient cash to fund the cash distributions contemplated under the Confirmed Joint Plan.  In short, there is a reasonable prospect that the Debtor's anticipated future cash will be sufficient to fund the payments required under the Confirmed Joint Plan, and that the Debtor will be able to satisfy its obligations under the Confirmed Joint Plan.  In summary, the evidence shows that the Confirmed Joint Plan offers a reasonable prospect of success, and is workable.  As such, the requirements of section 1129(a)(11) are satisfied.

R.     <u>Payment of Fees</u>.  All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to Section 2.2 of the Confirmed Joint Plan, thereby satisfying § 1129(a)(12).

S.     <u>Continuation of Retiree Benefits</u>.  The Confirmed Joint Plan complies with § 1129(a)(13).  The Debtor is not obligated to pay any retiree benefits subject to § 1114.

T.     <u>No Domestic Support Obligations</u>.  The Debtor does not have any domestic support obligations.  Therefore, § 1129(a)(14) is not applicable.

U.     <u>Projected Disposable Income</u>.  The Debtor is not an individual.  Therefore § 1129(a)(15) is inapplicable.

V.      <u>Transfers Will Comply with Nonbankruptcy Law</u>.  The Confirmed Joint

Plan complies with § 1129(a)(16) because any transfers of assets to be made under the

Confirmed Joint Plan will be made in accordance with applicable non-bankruptcy law

that governs the transfer of property by a corporation or trust that is not a moneyed,

business, or commercial corporation or trust.

W.      <u>Fair and Equitable; No Unfair Discrimination</u>.  All Classes of Claims have

accepted (or are deemed to have accepted) the Confirmed Joint Plan.  As such,

compliance with § 1129(b) is not required as to such accepting Classes of Claims.  In

any event, the Confirmed Joint Plan is fair and equitable and does not discriminate

unfairly as to any Class of Claims or Interests, except only to the extent the Holders of

Claims in such class have stipulated to discriminatory treatment. The Confirmed Joint

Plan contemplates that holders of Priority Claims and Class 2 General Unsecured

Claims shall receive payment of their Allowed Claims in full on the Effective Date. The

Confirmed Plan contemplates that Class 3 Claims shall receive the treatment to which

they have agreed and stipulated under the Settlement Agreement, the Plan, and Plan

Supplement Documents. Holders of Class 4 Claims shall retain their "Subscription

Credits" for a reasonable period of time, and Holders of Class 5 Interests shall retain

their Interests in the Debtor. Holders of Class 4 Claims and Class 5 Interests

overwhelmingly supported this proposed treatment when voting on the Trustee's Plan,

and the Confirmed Joint Plan proposes the same treatment. Thus, the Confirmed Joint

Plan satisfies at least one of the three alternatives under §§ 1129(b)(1)(B) and (C) as to

each Class of Unsecured Claims and Interests.

X.      <u>No Other Plan.</u>  The Studios have withdrawn their separate proposed plan

and have joined the Trustee as co-proponents of the Confirmed Joint Plan. Accordingly,

no other chapter 11 plan will be confirmed by the Court in this Bankruptcy Case, and

§ 1129(c) is satisfied.

Y.     Principal Purpose of Confirmed Joint Plan.  The principal purpose of the Confirmed Joint Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  Therefore, the Confirmed Joint Plan satisfies the requirements of § 1129(d).

Z.     Small Business Case.  This Case is not a Small Business Case.  As such, § 1129(e) is not applicable.

AA.     Solicitation.  As evidenced by the docket in this Case, including the *Certificate of Service* [Docket No. 668], the Trustee's Plan, the Trustee's Disclosure Statement, and appropriate ballots were transmitted and served on all parties entitled to copies of thereof (including all persons entitled to vote on the Trustee's Plan and all persons who would be entitled to vote on the Confirmed Joint Plan) in substantial compliance with the Bankruptcy Code, Bankruptcy Rules and relevant orders of the Court.  All procedures used to distribute solicitation materials for the Trustee's Plan and to tabulate the ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Court, and all other rules, laws, and regulations. The Motion to Modify and the Confirmed Joint Plan do not adversely impact the treatment of any Class of Claims or Interests that previously accepted the Trustee's Plan and, as such, those Classes of Claims and Interests (including Classes 4 and 5) are deemed to accept the Confirmed Joint Plan pursuant to Bankruptcy Code § 1127 and applicable law.

BB.     Assumed Contracts.  The following are Assumed Contracts: any executory contract or unexpired lease which (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (iv) is not the basis of a Credit Holders' Claim.

CC.    As to the Assumed Contracts (i) proper, timely, adequate and sufficient notice of the assumption and assignment of the Assumed Contracts has been provided in accordance with sections 102(1) and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6006 and 9014, (ii) such notice was good, sufficient and appropriate under the particular circumstances, and (iii) no other or further notice of the assumption and assignment of the Assumed Contracts is or shall be required.

DD.    The Trustee has demonstrated (i) that his determination to assume the Assumed Contracts is an exercise of its sound business judgment, and (ii) that the assumption and assignment of the Assumed Contracts is in the best interests of the Debtor, its Estate and its creditors.

EE.    The Reorganized Debtor (i) has cured, or has provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) has provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, with the meaning of 11 U.S.C. § 365(b)(1)(B).  No cure payment or other cure or compensation is, or shall be, required with respect to the Assumed Contracts.

FF.    The Trustee has demonstrated and provided adequate assurance of the Debtor's ability to perform in the future under the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(C).

GG.    The Proposed Modifications to the Trustee's Plan as Outlined in the Joint Plan Do Not Adversely Change Treatment of Creditors' Claims.  The proposed modifications to the Trustee's Plan as discussed and requested in the Motion to Modify, and as reflected in the Confirmed Joint Plan, do not adversely change the treatment of the claim of any creditor that accepted the Trustee's Plan.  The modifications requested

in the Motion to Modify and reflected by the Confirmed Joint Plan are *not* of such a nature and effect that a creditor or interest holder who accepted the Trustee's Plan would be likely to reconsider its acceptance if asked to vote on the Joint Plan. Stated another way, the modifications to the Trustee's Plan which are reflected in the Joint Plan are not likely to trigger reconsideration *de facto*. As such, the modifications are "immaterial." In re American Solar King Corp., 90 B.R. 808, 824 (Bank. W.D. Tex. 1998) (quoting 8 Collier on Bankruptcy, ¶ 3019.03, at 3019-3 (15th ed. 1987)) ("A modification is material if it affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance.").

   i.  The Motion to Modify primarily serves to implement the Settlement Agreement that resolves the disputes between and among the Debtor, the Studios, and the Harmons, and results in the payment of Class 1 and Class 2 Claims in full on the Effective Date.

   ii.  The most material change to the Trustee's Plan requested under the Motion to Modify is the substantial change to the treatment of Class 3 Claims (the Studios). The Motion to Modify does not adversely impact the treatment of any other Class of Claims or Interests. Rather, if anything, the Confirmed Joint Plan results in materially better treatment to the holders of Claims in Classes 1 and 2 than was proposed in the Trustee's Plan, and the same treatment to the holders of Claims in Class 4 and Interests in Class 5 that was proposed in the Trustee's Plan.

   iii.  The other changes to the Plan requested under the Motion to Modify are in the nature of clarifications, or merely address unknowns or contingencies. None of them adversely affect creditors. Instead, they enhance the rights of creditors and the prospect of repayment.

HH.     Accordingly, the Confirmed Joint Plan shall be deemed accepted by all
creditors who previously have accepted the Trustee's Plan.  <u>See</u> Fed. R. Bankr. P.
3019(a) (if "the proposed modification does not adversely change the treatment of the
claim of any creditor … who has not accepted in writing the modification, it shall be
deemed accepted by all creditors … who have previously accepted the plan."); <u>In re KD
Company, Inc.</u>, 254 B.R. 480, 489 (10th Cir. BAP 2000) ("Renoticing modifications to a
plan is not required if the modifications are immaterial.") (citing <u>Beal Bank, S.S. B. v.
Jack's Marine, Inc.</u>, 201 B.R. 376, 380 n. 4 (E.D. Pa. 1996); <u>In re Cajun Electric Power
Coop., Inc.</u>, 230 B.R. 715, 730 (Bankr. M.D. La. 1999) (citing <u>In re American Solar King
Corp.</u>, 90 B.R. 808, 823 (Bank. W.D. Tex. 1998); <u>In re Penrod</u>, 169 B.R. 910, 918 (
Bankr. N.D. Ind. 1994)); <u>In re American Solar King Corp.</u>, 90 B.R. at 823 ("Further
disclosure occurs only when and to the extent that the debtor intends to solicit votes
from previously dissenting creditors or when the modification materially and adversely
impacts parties who previously voted for the plan."); 5 <u>Collier on Bankruptcy</u>, ¶ 1127.03,
at 1127-6 (15th ed. 1987) ("a new disclosure statement is not required in every case
where a modification is requested")).

        II.     <u>The Settlement Agreement Should Be Approved</u>.  There is a sound
business purpose for the terms and conditions of the Settlement Agreement, and its
approval is in the best interests of the Debtor, the Estate, its creditors, and its interest
holders. In making the determination that the Settlement Agreement should be
approved, the Court weighs the following factors: (1) the probability of success in the
litigation; (2) the potential difficulty in collecting on a judgment; (3) the complexity and
expense of the litigation; and (4) the best interests of creditors. <u>See</u> <u>id.</u> at 424-25; <u>see
also</u> <u>Kopp v. All American Life Ins. Co. (In re Kopexa Realty Venture Co.)</u>, 213 B.R.
1020, 1022 (10th Cir. B.A.P. 1997). These factors support approval of the Settlement
Agreement.

      i.     <u>Probability of Success in the litigation</u>.

JJ.    The Trustee might be able to (i) successfully appeal the Studios'

"California Judgment" and reduce or eliminate their Claims, and (ii) successfully confirm

the Trustee's Plan. However, with respect to the California Litigation, the Studios

already prevailed at the District Court level and their money judgment is based on a jury

verdict, which raises serious doubt regarding the probability of the Trustee's success.

Additionally, even if the Court finds that the original Trustee's Plan is confirmable, the

Court may also find that the Studios' Plan is confirmable, and elect to confirm the

Studios' Plan over the Trustee's Plan. The Court also might find that the Trustee's Plan

is only confirmable with certain modifications which might be less favorable to the

Debtor and the estate, and more favorable to the Studios, than the Trustee's Plan had

proposed. As in any litigation, there is substantial uncertainty. This factor weighs in

favor of approving the Settlement Agreement.

      ii.    <u>Potential Difficulty in Collecting on a Judgment</u>.

KK.    The Trustee not attempting to collect on a judgment. This factor is better

viewed in terms of the potential financial benefit to the Estate if litigation is successful. If

the Trustee had complete success in appealing the California Litigation, it would reduce

the Studios' Claims from approximately $62.4 million to $0. However, it is equally, if not

more, likely that the appeals will result in complete affirmance of the judgment amount,

or that the appeals will result in only a partial reduction in the Studios' Claim amounts. If

the Trustee successfully confirmed the original Trustee's Plan, but did not achieve the

elimination or reduction of the Studios' Claims in the California Litigation, then the

Debtor would be obligated to pay the Studios more than $62.4 million over 14 years,

with interest. In fact, depending upon whether and in what amount the California Court

augments the judgment with an award of fees and expenses, the Debtor might be

obligated to pay the Studios close to $70 million plus interest. There is an obvious

financial benefit if the Debtor can reduce its obligation to $9.9 million or $7.8 million (as set forth in the Settlement Agreement). This factor weighs in favor of approving the Settlement Agreement.

    iii.  <u>Complexity and Potential Expense of Litigation</u>.

  LL.  The Debtor's litigation with the Studios is, and has been, incredibly expensive and complex. A full-fledged confirmation battle involving competing plans would be even more expensive and complex. And the appeals that would almost certainly follow would multiply the complexity and expense. This factor weighs in favor of approving the Settlement Agreement.

    iv.  <u>Best Interests of Creditors and the Estate</u>.

  MM.  The Trustee exercised his prudent business judgment in entering into the Settlement Agreement and strongly believes that the benefits to the Debtor and its Estate outweigh any potential detriments. The Settlement Agreement resolves long-lasting disputes between previously intractable parties. It allows the Debtor to focus on growing its (already successful) business rather than continuing expensive litigation. It gives the Studios, which are the largest creditors of the Estate, relief for which they have specifically have bargained and a cessation of ongoing litigation. The Settlement Agreement provides a multitude of benefits to creditors and the Estate and should be approved.

  NN.  The Court announced other findings of fact and conclusions of law on the record at the Confirmation Hearing, which findings and conclusions are incorporated herein by reference.

  OO.  In summary, the Confirmed Plan complies with, and the Trustee and Studios have satisfied, all applicable confirmation requirements, and the Confirmed Plan will be confirmed by entry of the separate Confirmation Order.

PP.   Further, the Motion to Modify is well taken, and shall be granted without further notice or opportunity for hearing, as more specifically provided in the Confirmation Order.

QQ.   Additionally, the Settlement Motion is well taken, and shall be granted without further notice or opportunity for hearing, as more specifically provided in the Confirmation Order and the Approval Order (approving the Settlement Agreement).

RR.   Finally, the form and content of all Plan Supplement Documents have been approved by the Trustee, the Studios and, where applicable, by the Harmons in connection with the Settlement Agreement and the Joint Plan.  The Plan Supplement Documents are an integral part of the settlement represented by the Settlement Agreement and the Joint Plan.  The Trustee's decision to approve and, subject to confirmation of the Joint Plan and approval of the Settlement Agreement, to execute and deliver the Plan Supplement Documents on behalf of the Debtor and its chapter 11 bankruptcy estate represents a reasonable exercise of business judgment.  Entering into the Plan Supplement Documents as part of the Confirmed Joint Plan and the approved Settlement Agreement is in the best interests of the Debtor, its estate and creditors for the same reasons discussed in paragraph II, above.  Each of the Supplement Documents is both reasonable and necessary, and each should be approved by the Court in its entirety.  The Trustee, the Studios and other parties in interest should be authorized and directed to implement the terms of the Confirmed Joint Plan, including execution and delivery of all Plan Supplement Documents, on the Effective Date.



----------------------------------- END OF DOCUMENT -----------------------------------

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **FINDINGS AND CONCLUSIONS REGARDING CONFIRMATION OF JOINT PLAN OF REORGANIZATION** shall be served to the parties and in the manner designated below:

**By Electronic Service**:  I certify that the parties of record in this case as identified below, are registered CM/ECF users, and will be served notice of entry of the foregoing Order through the CM/ECF System:

- 

**By U.S. Mail**:  In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

☒ None

☐ If there are additional parties list the names and addresses of the additional parties.

☐ All parties on the Court's official case matrix.

/s/ Jeffrey Trousdale